UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK:
-------------------------------------------------X
UNITED STATES OF AMERICA,    :
                                                   :
                                                 :
                                                 :      21 Cr. 379 (VRB)
       v.                                 :
                                                 :
**CARLOS ORENSE AZOCAR,**    :
                                                 :
             **Defendant.**     :
-------------------------------------------------X

## CARLOS ORENSE AZOCAR MOTIONS IN LIMINE

Jason E. Foy (JF5839)
Eric J. Sarraga (ES6095)
FOY & SEPLOWITZ, LLC
105 Main Street
Hackensack, NJ 07601
201-457-0071

Attorneys for Carlos Orense Azocar

Dated: November 3, 2023

# DEFENDANT'S MOTION IN LIMINE

I. *Preclusion of Any Testimony By Proposed Government Expert Jennifer Taul.*

On October 26, 2023, the Government provided written notice pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure that it intends to present testimony at trial from Intelligence Research Specialist Jennifer Taul of the Drug Enforcement Administration. *See* Exhibit A: October 26, 2023 Government Letter. The Government purports that Ms. Taul is an expert on international drug trafficking and disclosed that she will provide opinion testimony regarding the following general topics:

1) Sources and manufacturing processes typically used to produce cocaine in Colombia.

2) Drug trafficking routes commonly used to transport cocaine including land, air, and maritime routes, from Colombia and Venezuela to the United States.

3) Means and methods of operations used by narcotraffickers.

4) The use of slang and coded language for cocaine.

5) How large-scale Venezuelan narcotraffickers often do business with Mexican drug cartels and Colombian Guerillas (FARC).

6) The use of illicit business arrangements between Venezuelan traffickers and Venezuelan politicians, law enforcement officers, and military leaders to provide protection to narcotraffickers.

7) Prices of cocaine in Venezuela and the United States.

8) The appearance and packaging of cocaine.

As an initial matter, Ms. Taul's testimony should be precluded because the Government's disclosure is inadequate due to its generalized nature and failure to sufficiently summarize Ms. Taul's proposed expert opinions. Pursuant to Rule 16(a)(1)(G), the disclosure for an expert witness must contain *inter alia* "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed" and the "bases and reasons for them." Here, the Government disclosed a list of general topics Ms. Taul may testify about without summarizing her actual opinions about these topics. The omission of Ms. Taul's anticipated testimony renders the Government's disclosure deficient.

The testimony of Ms. Taul should also be precluded because her proffered expert testimony does not meet the requirements of Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). Ms. Taul does not qualify as an expert and the proposed testimony will not assist the trier of fact under Rule 702. To the extent that the testimony is admissible, its probative value is negligible and should be excluded under Rule 403. Alternatively, a *Daubert* hearing should be held because the Government's expert disclosure raises significant issues and doubts about the qualifications, relevance, and reliability of Ms. Taul's opinions.

Expert testimony is only appropriate when it concerns "scientific, technical, or other specialized knowledge" that will "assist the trier of fact to understand the evidence or to determine a fact in issue . . ." *See* Fed. R. Evid. 702; *see also See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire v.*

*Carmichael*, 526 U.S. 137, 141 (1999) (same analysis applies to matters of a technical, rather than a scientific expertise). The latter condition "goes primarily to relevance." *Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.*

Additionally, the witness must qualify as an expert from "knowledge, skill, experience, training or education." Fed. R. Evid. 702. The testimony of a proffered expert may take the form of "an opinion or otherwise" if the testimony is "based upon sufficient facts or data," is produced from "reliable principles and methods" and the expert has "applied the principles and methods reliably to the facts of the case." *Id.* "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 158 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). The underlying purpose of Rule 702 is to engage the trial judge in the vitally important gate-keeping function to exclude expert or limit expert testimony that is either unreliable or unhelpful. *See* Fed R. Evid. 702 advisory committee's note; *see also Kumho Tire*, 526 U.S. at 152 ("The objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").

When evaluating the reliability of an expert's testimony, the Court must "undertake a rigorous examination of the facts on which the expert relies, the method

by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). When conducting its analysis, the Court "must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Id.* at 266.

Here, Ms. Taul does not possess the "knowledge, skill, experience, training or education" to qualify as an expert to testify as an international drug trafficking expert. Ms. Taul has never been previously admitted to testify as an expert regarding international drug trafficking or any other related topics. Additionally, she has never published any publications or peer-reviewed articles.

Based on Ms. Taul's training, education, and experience, there is no reliable reasoning or methodology to support admissible expert opinion testimony in this matter. "To warrant admissibility . . . it is critical that an expert's analysis be reliable at every step." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir 2002. "[W]hen expert opinion is based on data, methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Berk v. St. Vincent's Hosp. & Med. Ctr.,* 380 F.supp. 2d 334, 355 (S.D.N.Y. 2005). Unlike scientific forms of expert testimony, opinions regarding international drug trafficking cannot be verified through tests or experiments. The Government's disclosure contains topic areas that are ripe for fact testimony through a witness with subjective personal

4

knowledge, not opinions based on unreliable reasons or methodologies. For example, the details regarding the sources and manufacturing typically used to produce cocaine in Colombia and the locations where cocaine is typically processed, if relevant, can only be offered into evidence through fact witnesses with personal knowledge. The Government cannot circumvent the hearsay rules by offering Ms. Taul's proposed testimony under the guise of expert opinions.

Furthermore, the proposed witness testimony is irrelevant because it does not make any fact at issue more or less likely to be true and will not assist the jury in understanding the evidence or aid in answering the questions at issue in the case. Fed. R. Evid. 401, 702. The proposed expert testimony is overly broad and is being offered as a mechanism to overshadow the Government's lack of direct evidence against Mr. Orense Azocar. For example, testimony regarding the production of cocaine or the existence of trafficking routes does not make a fact to be considered by the jury in this matter to be more or less likely to be true. The allegations against Mr. Orense Azocar are relatively straightforward; he is accused of engaging in a conspiracy to violate the narcotics laws of the United States by importing and exporting cocaine by boat, plane, and motor vehicle while in the possession of firearms in furtherance of the same. These allegations are not beyond the ken of an average juror and the proposed expert testimony of Ms. Taul will not assist the jury in determining whether a fact is more or less likely to be true. *See United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991) (expert testimony on drug-related matters is unnecessary and properly excludable where "'all the primary facts can be

5

accurately and intelligibly described to the jury, and if they, as [persons] of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience or observation in respect of the subject under investigation.'") (quoting *Salem v. United States Lines Co.*, 370 U.S. 31, 35, (1962)).

Moreover, even if deemed scientifically reliable and relevant, the relevance is substantially outweighed by the confusion and prejudice generated by "dressing up this evidence of very limited relevance in the guise of an expert opinion." *United States v. Nieves*, 2021 WL 1535338 (S.D.N.Y. April 19, 2021), 19 Cr. 354 (JSR). Accordingly, the testimony must also be excluded pursuant to Rule 403. Rule 403 excludes expert testimony if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Expert testimony has a heightened risk of violating Rule 403 because of the difficulty of laypersons to evaluate the testimony, leaving the jury vulnerable to being misled by unsupported inferences and the inevitable credibility given to "experts" qualified as such by a district court. *See Daubert*, 509 U.S. at 595.

Ms. Taul's overly broad proposed testimony has limited probative value that is substantially outweighed by the danger of unfair prejudice, confusion, and misleading the jury. Ms. Taul's testimony is being offered to compensate for the lack of direct evidence and expected uncorroborated testimony from the cooperating witnesses. If her expert testimony is permitted, it will improperly bolster the

testimony of the fact witnesses, and impermissibly encourage the inference of Mr. Orense Azocar's guilt from the behavior of unrelated persons. *See U.S. v. Zhong*, 26 F.4th 536, 537-38 (2d Cir. 2022) (quoting *U.S. v. Cruz,* 981 F.2d 659, 663 (2d Cir. 1992). The overarching expert testimony is being offered as a substitute for missing factual evidence and will mislead the jury and usurp its role by providing an overall conclusion of criminal conduct based on impermissible hearsay. *See U.S. v. Dukagjini,* 326 F.3d 45, 54 (2d Cir. 2002). Ms. Taul's opinion testimony based on unsubstantiated assumptions, devoid of any personal knowledge or facts, fails the Rule 403 balancing test and has the potential to lead to an improper presumption of guilt.

For these reasons, Ms. Taul should be precluded from testifying as an expert. Alternatively, the Court should schedule and hold a *Daubert* hearing to measure whether the proposed expert testimony and opinions meet the requirements of Rule 702 and *Daubert*.

II. ***Preclusion of Cross Examining the Defendant Regarding His Prior Conviction Should He Elect to Testify.***

In 2004, Mr. Orense Azocar was convicted in Venezuela of "Homicide in a Quarrel" under Article 424 of the Venezuelan Criminal Code. *See* Exhibit B: July 1, 2014, Venezuelan Supreme Court Final Judgment (English Translation, USAO_3942-3966.) On December 1, 2004, Mr. Orense Azocar was involved in an altercation that caused him to kill Carlos Cedeno under threat to his life. He was initially charged with Homicide under Article 408 of the Venezuelan Criminal Code but pleaded guilty to the lower-level offense under Article 424, Homicide in Quarrel, because he acted in response to a perceived threat to himself. Should he elect to

7

testify, Mr. Orense Azocar moves to preclude the Government from cross-examining him regarding this prior conviction pursuant to Rule 609.

Rule 609 "vests broad discretion in the trial judge to admit, for purposes of impeachment, evidence that the [defendant] has been convicted within ten years of the time of his testimony of a crime punishable by imprisonment in excess of one year ... if the court determines that 'the probative value of admitting [the conviction] outweighs its prejudicial effect to the defendant.'" *United States v. Vasquez*, 840 F.Supp.2d 564, 567 (E.D.N.Y. 2011) (quoting *United States v. Pedroza*, 750 F.2d 187, 202 (2d Cir. 1984)). When the witness is the accused, the standard for admissibility is heightened and the Government bears the burden of showing that the probative value outweighs the prejudicial effect to the accused, as opposed to the "substantial" standard under Rule 403. *Ibid*.

The Government should be precluded under Rule 609 from cross-examining Mr. Orense Azocar regarding his prior conviction if he testifies. The conviction occurred in 2004 and is more than 10 years old and outside the permissible timeframe. Although his conviction falls short of establishing a justified homicide, Mr. Orense Azocar's prior conviction takes into consideration the mitigating circumstances that led to an unlawful homicide. As a result, his remote conviction is not probative of his character for truthfulness or untruthfulness and its probative value does not outweigh its prejudicial effect on Mr. Orense Azocar as required by FRE 609(a)(1)(B). Thus, cross-examination regarding the prior conviction should be excluded.

III. ***Preclusion of hearsay statements from the Government's cooperating witnesses.***

Mr. Orense Azocar moves to preclude anticipated hearsay testimony from the Government's cooperating witnesses that does not fall in the hearsay exception set forth at Fed. R. Evid. 801(d)(2)(E). Based on the review of the discovery and 3500 materials, the defendant moves to preclude the following hearsay testimony:

- Government witness Antonio Arvelaiz testifying that:

  - He met "Slader" at a federal detention center in Miami, Florida who told him that he was arrested near the Dominican Republic with approximately 1000 kilograms of cocaine on a vessel as part of the maritime transportation crew that transported cocaine for Mr. Orense Azocar in 2016. Slader also stated that he believed he was arrested because a previously arrested maritime transportation crew, who also transported cocaine for Mr. Orense Azocar, had advised law enforcement of Slader's narcotics laden vessel. (3502-43)

  - He met Benny Palmeri in the church of the federal detention facility and he advised him that there were two separate arrested maritime transportation crews that work for Mr. Orense Azocar and were housed in the federal detention center. Palmeri also stated that the first crew had advised Palmeri that when the crew departed Venezuela, the crew observed COA at the departure point of the vessel. (3502-43)

  - Osvaldo Esparragoza aka Chivo – one of the guys working with my uncle said Santacruz was killed. (3502-61)

  - Chivo told him that Chivo was coming from Valencia and Santacruz was forced in a car, "squeezed" him (i.e. beat up/tortured), "tore him to pieces with a gun" by flipping on automatic gun (danced on him), and dumped the body. Chivo told him what happened before it was on the news. (3502-62)

  - Someone in Venezuela told him that Mr. Orense Azocar was going to kill him. (3502-62)

9

- - He learned from people that used to work for Mr. Orense Azocar that he sent a sailboat with a Caribbean flag, and that he was sending speedboats and planes. He learned that they were sending speedboats to PR with ChiChi Smith, to the Dominican Republic, and Tortola Island. At the time they were doing well and a lot of work. Johnathan Arienta said that the boats were sent in Dominican Republic from Punto Fijo, Carapuno, and Puenta la Cruz. (3502-62)

- Government witness Roberto Lopez Perdigon testifying that Mr. Orense Azocar killed someone based on what he heard from someone. (3503-30)

To satisfy the co-conspirator exception to the hearsay rule under Rule 801(d)(2)(E), the Government would have to prove, by a "preponderance of the evidence[,] that a conspiracy existed, that the defendant and declarant were members, and that the statements were made during the course of and in furtherance of the conspiracy. *United States v. Wedd,* 993 F.3d 104, 117 (2d Cir. 2021). It is unclear if the declarants of these statements were members of a conspiracy, and the statements were not made during the course of and in furtherance of the conspiracy. Thus, these statements constitute impermissible hearsay and pursuant to Rule 802, the witnesses should be precluded from making the statements at trial. Moreover, all additional hearsay statements that do not satisfy an exception to the hearsay rule should be excluded at trial.

Counsel for the defense is still reviewing discovery and the 3500 material and reserves the right to make supplemental applications. The defendant will supplement these arguments during the pre-trial conference on November 14, 2023.

Dated: November 3, 2023                                  Respectfully Submitted,

*Jason E. Foy*
_____
JASON E. FOY (JF5839)


*Eric J. Sarraga*
_____
ERIC J. SARRAGA (ES6095)