UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK:
-------------------------------------------------X
UNITED STATES OF AMERICA,            :
                                     :
                                     :
                                     :
                                     :     21 Cr. 379 (VRB)
          v.                         :
                                     :
CARLOS ORENSE AZOCAR,                :
                                     :
               Defendant.            :
-------------------------------------------------X

## CARLOS ORENSE AZOCAR OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE

Jason E. Foy (JF5839)
Eric J. Sarraga (ES6095)
FOY & SEPLOWITZ, LLC
105 Main Street
Hackensack, NJ 07601
201-457-0071

Attorneys for Carlos Orense Azocar

Dated: November 10, 2023

**PRELIMINARY STATEMENT**

The defendant, Carlos Orense Azocar, opposes the Government's motions in limine to (i) admit evidence of narcotics-related corruption under Rule 403; and (ii) admit evidence of statements by drug traffickers and government officials to government witnesses under the hearsay rules. With regards to the Government's motion to preclude evidence or argument concerning the punishment Mr. Orense Azocar may face if convicted at trial, the Defense does not intend to refer to Mr. Orense Azocar's sentencing exposure should he be convicted of the charged crimes.

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE**

I. **Opposition to Admit Evidence of Narcotics-Related Corruption Under Rule 403.**

If the court determines that the evidence of narcotics-related corruption is relevant and admissible as direct evidence or pursuant to Rule 404(b), Mr. Orense Azocar requests that it be precluded because it fails the balancing test under Rule 403. To be admitted, evidence must pass the analysis pursuant to Federal Rule of Evidence 403, which states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See Huddleston v. Unites States*, 485 U.S. 681, 687-88 (1988); *United States v. Reifler*, 446 F.3d 65,91 (2d Cir. 2006). If, after a Rule 403 analysis, the court deems that the evidence is admissible, as a final precaution and "protection against unfair prejudice to the

1

defendant", it must instruct the jury that it cannot consider the offered evidence simply for its propensity. *United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984).

The Government seeks to admit evidence of Venezuelan government corruption through witness testimony and evidence from a cellphone seized during Mr. Orense Azocar's arrest by Italian authorities to establish his relationship with public officials. The Government submits that the narcotics loads were transported with impunity due to the support from Venezuelan officials and the Venezuelan military. The probative value of this evidence is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury.

The Government's evidence against Mr. Orense Azocar amounts to rumors of guilt and his alleged involvement in narcotics-related corruption is primarily based upon uncorroborated witness testimony and hearsay. There is no direct evidence that he bribed military officers and public officials. The Government intends to rely on evidence from the seized cellphone to establish a potential association with allegedly notorious Venezuelan public officials. The military and public officials that are alleged to be members of the charged conspiracy in this case held some of the highest Venezuelan government positions. The alleged corruption has been reported upon across media sources throughout the world. In addition to being covered by national and international news outlets, these individuals have been depicted in television shows, documentaries, and movies. This proposed evidence of Mr. Orense Azocar's potential relationships with these officials, coupled with uncorroborated testimony from the cooperating witnesses, demonstrates a propensity for the defendant to

commit crimes based on his associations and is substantially more prejudicial than probative of the crimes charged in this case. *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)). Furthermore, evidence of government corruption will confuse and mislead the jury and should be precluded under Rule 403.

II. **Opposition to Admit Evidence of Statements by Drug Traffickers and Government Officials to CC-5, CC-14, and Witness-1 Under the Hearsay Rules.**[1]

The Government is seeking preliminary rulings on the admissibility of co-conspirator statements under the following hearsay rules: adoptive admissions, pursuant to Rule 801(d)(2)(B); co-conspirator statements, pursuant to Rule 801(d)(2)(E); and statements against party interests, pursuant to Rule 804(b)(3). Mr. Orense Azocar opposes the Government's request to admit the statements addressed below because they do not qualify as non hearsay or satisfy any exceptions to the hearsay rule and thus, are not admissible under Rule 802.

A. **Legal Standards**

  1. **Adoptive Admissions**

Rule 801(d)(2)(B) provides that a statement is not hearsay if it is offered against an opposing party and the party has manifested an adoption or belief in its truth. Fed. R. Evid. 801(d)(2)(B). A person can adopt another's statements by appropriate means such as "language, conduct, or silence." *In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 321 (S.D.N.Y. 2016). The proponent of the admission

---

[1] For the purpose of this submission, the defendant adopts the co-conspirator numbers contained in Exhibit A to the Government's Motions in Limine.

3

has the burden of proving by a preponderance of the evidence that the opposing party's conduct manifested an intent to adopt the statement. *Phipps v. Comprehensive Community Development Center Corp.,* No. 00-CIV-6063, 2005 WL 287413, at *40-41 (S.D.N.Y. Feb. 2, 2005). Silence is only evidence of an admission if there are circumstances which render it more reasonably probable that an individual would answer the charge made against him than that he or she would not. *United States v. Flecha,* 539 F.2d 874, 877 (2d Cir. 1976).

### 2. Co-Conspirator Statements

Under Rule 801(d)(2)(E), a statement is not hearsay if the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). To admit a statement made by a co-conspirator during and in furtherance of the conspiracy under Rule 801(d)(2)(E), the court must find by preponderance of the evidence "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Coppola,* 671 F.3d 220, 246 (2d Cir. 2012) (quoting *United States v. Farhane,* 634 F.3d 127, 161 (2d Cir. 2011)).

Although the conspiracy does not need to be identical to the conspiracy charged in the indictment, the evidence must still demonstrate a common agreement to achieve a particular objective in furtherance of which the out of court statement is made. *United States v. Coppola,* 671 F.3d 220, 246 (2d Cir. 2012). To find a conspiracy between the declarant and the party against whom the statement is offered, "there

4

must be some independent corroborating evidence of the defendant's participation in the conspiracy." *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996).

A statement made during the course of a conspiracy is made in furtherance of a conspiracy if it prompts the listener to respond in a way that promotes or facilitates the carrying out of a criminal activity. *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990). This includes statements that serve some current purpose in the conspiracy such as to "provide reassurance, or seek to induce a co-conspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." *Id.* at 959; *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999); *See United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994). Statements that merely constitute idle chatter, casual conversations about past events, or a narrative description are not admissible under this hearsay exception. *See United States v. Lieberman*, 637 F.2d 95, 102-03 (2d Cir. 1980); *United States v. Blackmon*, 839 F.2d 900, 913 (2d Cir. 1988).

### 3. Statements Against Party Interests

Under Rule 804(b)(3), a court may admit a statement against a declarant's penal interest if that declarant is unavailable as a witness. Fed. R. Evid. 804(b)(3). To admit a statement under this rule, a district court must determine that "a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest," and that the statement is supported by "corroborating circumstances that clearly indicate its trustworthiness, if it is offered

in a criminal case as one that tends to expose the declarant to criminal liability." *Id.;* *United States v. Gupta,* 747 F.3d 111, 127 (2014).

A statement is against a declarant's penal interest so long as it would have been probative in a criminal case against him or her. *United States v. Persico*, 645 F.3d 85, 102 (2d Cir. 2011). After a court finds that a statement is against the declarant's penal interests, it must determine whether there are corroborating circumstances indicating "both the declarant's trustworthiness and the trustworthiness and the truth of the statement." *United States v. Lumpkin*, 192 F.3d 280, 287 (2d Cir. 1999).

B. Discussion[2]

### 1. Statements by CC-2, CC-11, CC-19, CC-21, and CC-20 to CC-5 and in CC-5's Presence Relating to Narcotics Trafficking

The following statements by CC-2, CC-11, CC-19, CC-21, and CC-20 are hearsay and are not admissible under any exceptions:

- "Early on in his tenure working for his uncle, CC-5 overheard a discussion between the defendant, CC-2, and CC-11 regarding transporting a cocaine load. CC-2 stated that they were going to arrange for transport through Apure state by land to a *finca*; in response, CC-11 stated that this could not happen again."

This statement is hearsay and does not satisfy the elements under Rule 801(d)(2)(E). There is insufficient evidence to establish that Mr. Orense Azocar was engaged in a conspiracy with CC-2 and CC-11 and that these statements were made during the course of that conspiracy. Mr. Orense Azocar is alleged to have engaged and is charged with a broad conspiracy from 2003 to 2020. There is insufficient

---

[2] For ease of reference, the numbering and lettering format contained herein tracks the Government's motion.

6

evidence to prove by preponderance of the evidence that the statement was made during that time.

- "Upon hearing the conversation, another member of the defendant's security detail named "Henry" (CC-19") commented to CC-5 that CC-11 was a big shot."

This statement is hearsay and does not satisfy the requirements under Rule 801(d)(2)(E). There is a lack of evidence to establish that CC-19 and Mr. Orense Azocar were engaged in a conspiracy together. Based on a review of the discovery and 3500 material, it is unclear who CC-19 is. Even if the Government's assertion that he was a member of Mr. Orense Azocar's security detail is true, there is no independent corroborating evidence of his participation in a drug trafficking conspiracy. Such association between CC-19 and Mr. Orense Azocar does not establish a conspiracy with a criminal act as its objective. *See United States v. Russo,* 302 F.3d 37, 44 (2d Cir. 2002) (precluding the hearsay statement because the general association between the declarant and the defendant in the Mafia did not satisfy the conspiracy requirement). Additionally, the statement that "CC-11 is a big shot" is a narrative statement and does not serve a purpose or further a conspiracy.

- "During a meeting in approximately 2007 or 2008, CC-2 told the defendant, in CC-5's presence, that with the "patas de goma" (*i.e.*, the FARC), the defendant could not be late with his money."

This hearsay statement does not further a conspiracy. There is no context under which this statement was made. Simply stating that you cannot be late with money to a terrorist group does not further a conspiracy. There is insufficient foundation to admit this statement under a hearsay exception.

7

- "At some point after CC-5 stopped working with the defendant in 2010, Emiliano Martinez, a/k/a "Chiche Smith" ("CC-20"), a wealthy drug trafficker who operated speedboats and worked with the defendant, told CC-5 that the defendant was sending cocaine to the mainland United States through Puerto Rico."

This statement is inadmissible because it is unclear if CC-20 and Mr. Orense Azocar were engaged in a conspiracy and if the statement was made during that conspiracy. At the time CC-5 no longer worked with Mr. Orense Azocar and would not have known if CC-20 was working with him. If CC-20 made this statement, it was not in furtherance of a conspiracy because CC-5 was no longer working with Mr. Orense Azocar and the statement could not have served a current purpose in a conspiracy. The statement is a narrative made during casual chatter.

- "Around 2014 to 2016, an individual who was working for the defendant named John Arienta ("CC-21") told CC-5 that the Orense DTO was very busy during this time period, and that the defendant was continuing to send boats and planes laden with massive amounts of cocaine, including to the Dominican Republic, Puerto Rico, and Tortola, from various locations in Venezuela, including from Falcon state."

This statement is inadmissible hearsay because there is no evidence that CC-21 worked for and was engaged in a conspiracy with Mr. Orense Azocar. At the time of this alleged statement, CC-5 no longer worked for Mr. Orense Azocar and was likely incarcerated. If this statement was in fact made to CC-5, it was likely made in a federal detention facility. Thus, the statement could not have been made in furtherance of a conspiracy and amounts to no more than a rumor.

### 2. Statements by CC-3 to CC-5 Relating to Military Corruption, in Service of Narcotics Trafficking

The defendant has no objection to the Government's request to admit these statements as non-hearsay and pursuant to Rule 801(d)(2)(E) so long as the proper foundation is laid during trial.

### 3. Statements by CC-6, CC-2, and CC-4 in CC-5's Presence Regarding Money Laundering of Narcotics Proceeds

- "Before CC-4 became the CEO of Company-1, CC-5 participated in a meeting in an office at a commercial complex in Caracas, with the defendant, CC-6, CC-4, and others. At the meeting, CC-6 stated, and the group more generally discussed, that once CC-4 became the CEO of Company-1, there was no way that they were not going to get money out of the United States, and that they had to take advantage of CC-4's position for as long as it lasted."

This statement contains inadmissible hearsay and does not meet the co-conspirator's statement exception. There is no evidence that Mr. Orense Azocar was engaged in a conspiracy with CC-6. The statement also was not in furtherance of a specific criminal purpose and instead, was related to legitimate business dealings through Company-1.

### 4. Statements by CC-11 and CC-13 to CC-14 Regarding Protection by Venezuelan Police and Military

- "In approximately 2006, CC-11 told CC-13, who later told CC-14, that the defendant was good at narcotics transportation and could transport CC-13's stalled narcotics load. CC-11 later told CC-13 and CC-14 that that the defendant assists CC-11 in using the Venezuelan military and police for protection in Venezuela with respect to moving narcotics and reiterated the same to them once in the presence of the defendant after the defendant informed CC-13 and CC-14 that he would have the Venezuelan military pick up their narcotics loads."

The defendant requests that the Court reserve its ruling on the admissibility of these hearsay statements until they are introduced and if there is an objection

9

during the trial. The defendant and the court will be in a better position to assess whether a sufficient foundation has been laid under Rules 801(d)(2)(E), 801(d)(2)(B), and 804(b)(3). As a preliminary assessment, CC-11's statement that the defendant "was good at narcotics transportation and could transport CC-13's stalled narcotics load" does not in itself establish that CC-11 and the defendant were engaged in a conspiracy to sell drugs together and that the statement was made during that conspiracy.

### 5. Statements by Venezuelan Military Officials Regarding Venezuelan Government and Military Sanction of Narcotics and Weapons Transportation

- "After Witness-1 stopped the defendant's convoy on December 15, 2016, the high-ranking members of the convoy also identified themselves by name and title to Witness-1. Perez Leal stated that only Witness-1 and his second- in-command could conduct the search because high-ranking SEBIN official were involved; he also asked to relocate to a National Guard station nearby in El Guayabo, Zulia state for the search."

Perez Leal's statement to Witness-1 constitutes inadmissible hearsay and does not meet the co-conspirator exception because there is no evidence that Perez Leal was engaged in a conspiracy with Mr. Orense Azocar and that the statement was in furtherance of the conspiracy.

- "During the same stop of the defendant's convoy on December 15, 2016, Witness-1's superior ordered Witness-1 to call off the investigation because the convoy was sanctioned by the Venezuelan military."

This statement is also hearsay and does not meet the co-conspirator exception because "Witness-1's superior" has not been identified and there is no evidence that he was engaged in a conspiracy with the defendant.

10

**CONCLUSION**

For the foregoing reasons, the Court should deny the Government's motions *in limine*, preclude evidence of narcotics-related corruption, and preclude the aforementioned statements under the hearsay rules.

Dated:   November 10, 2023               Respectfully Submitted,

*Jason E. Foy*

_____
JASON E. FOY (JF5839)

*Eric J. Sarraga*

_____
ERIC J. SARRAGA (ES6095)