## MOSKOWITZ COLSON
## GINSBERG SCHULMAN

Moskowitz Colson
Ginsberg Schulman LLP
80 Broad Street, Suite 1900
New York, NY 10004

(212) 257-6455
www.mcgsllp.com

November 26, 2025

The Honorable Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:  U.S. v. Carlos Orense Azocar
21 Cr. 379 (VSB)

Dear Judge Broderick:

Carlos Orense Azócar will appear before Your Honor to be sentenced. At 70 years old, Mr. Orense Azócar faces a statutory minimum of 40 years' imprisonment, a term that exceeds his life expectancy and ensures he will die in custody.

After enduring more than three years of hard time at the Metropolitan Detention Center, with its well-documented hardships; after a lifetime of supporting his family; and after a trial that relied heavily on historical, contested testimony, the defense respectfully submits that the mandatory minimum is sufficient and any additional time would serve no legitimate sentencing purpose. Forty years is an unequivocally severe punishment. For a man of his age and declining health, it is indistinguishable from a life sentence. More time would not further deterrence, enhance public protection or better reflect his history and characteristics. In truth, adding years to a sentence that already ensures death in prison serves no purpose other than excess.

Although Mr. Orense Azócar exercised his constitutional right to trial and preserves his appellate rights, he has consistently shown dignity, humility and respect for this Court. He does not minimize the seriousness of the charges or the impact that drug trafficking has on communities. Throughout his incarceration, he has conducted himself with restraint and quiet acceptance of circumstances no one his age should endure. He understands that the consequences he now faces are grave and life-ending, and he has approached this process with the same calm and respectful demeanor that has defined his life. Nothing in this submission seeks to relitigate the trial; it seeks only to help the Court understand the man who stands before it and the life he has lived.

Judge Vernon S. Broderick
November 26, 2025
Page 2

 This submission aims to provide the Court with an understanding of Mr. Orense Azócar as a person – a man raised in hardship who supported his family from a young age and devoted himself to his children and grandchildren. He was unfailingly kind, generous and loyal and, despite the seriousness of the charges and the sentence he now faces, has consistently acted with dignity and humility. He has incurred no disciplinary infractions at the MDC and has remained a respectful, compliant and constructive presence.

 The narrative that emerges from the letters submitted on Mr. Orense Azócar's behalf – written by those who have known him all his life, across generations – is powerful, credible and consistent. The letters do not excuse the jury's verdict nor do they deny the seriousness of the case. Instead, they provide the missing half of the story – the only firsthand account of who he is as a human being. The letters paint a portrait dramatically different from the one presented at trial.

 His older brother Abdonis, a pulmonologist, writes that Mr. Orense Azócar has always been "the cornerstone of our family well-being, ensuring that we lacked nothing, with great effort, work, and sacrifice on his part" (Ex. A, Letter of Abdonis Azócar). His sister, an attorney, describes how – when she was just eight years old – Carlos "nobly and responsibly took on the task of caring for us and our mother" after their father was shot and killed during an attempted kidnapping in Venezuela when he was 46 years old (Ex. B, Letter of Virginia Orence). Mr. Orense Azócar's son calls him "the pillar of our family," a man whose integrity, perseverance and compassion shaped his life (Ex. C, Letter of Abdonis Orense Ydler). His former wife writes that he "was always, and still is, an exemplary father… a respectful son… and a loyal friend" (Ex. D, Letter of Carel Ydler Medina). A cousin recalls how he sheltered her family for weeks during a medical emergency, providing constant transportation and emotional support (Ex. E, Letter of Nexayda Martínez Azócar). An aunt describes him simply as "like another son… there every time I have needed him" (Ex. F, Letter of Delia Azócar).

 The letters form a chorus, all describing the same man. Mr. Orense Azócar is kind, dependable, selfless and generous. His life outside the instant allegations tells a different, richer story. These are lived experiences, not embellishments.

 The charges of conviction are serious – but the statutorily mandated 40-year sentence for a 70-year-old man is already severe beyond measure. It already accomplishes everything Congress intended: punishment, deterrence, incapacitation and respect for the law. Nothing more is necessary.

## I. PROCEDURAL BACKGROUND

 On June 3, 2021, a four-count indictment was returned against Carlos Orense Azócar, charging him with conspiracy to import cocaine, conspiracy to possess firearms in

Judge Vernon S. Broderick
November 26, 2025
Page 3

furtherance of that offense and a § 924(c) firearms offense. Prior to trial, the Government dismissed Count Two (Dkt. 110, May 22, 2025 Opinion & Order at 1-2).

Trial commenced on November 27, 2023. The Government relied primarily on four cooperating witnesses, each testifying to historical events spanning from the early 2000s through 2016. On December 12, 2023, the jury convicted Mr. Orense Azócar of all remaining counts and acquitted him of the destructive-device object of the § 924(c) charge (*Id.*, at 1).

The verdict and statutory framework leave the Court with a clear, but narrow, sentencing question: whether to impose the mandatory minimum of 40 years, or something higher. For the reasons set forth below, every legal, factual and humanitarian consideration supports imposing only that minimum.

## II. <u>HISTORY AND CHARACTERISTICS OF THE DEFENDANT</u>

Under § 3553(a)(1), the Court considers the history and characteristics of the defendant. While sometimes this factor may provide little guidance, in this case, it is illuminating.

The letters submitted by Mr. Orense Azócar's family – his brother, sister, son, daughters, ex-wife, aunt and cousin – offer the Court a detailed, consistent, credible and human picture of a man whose life has not been defined by criminality or violence, but by responsibility, generosity, loyalty and sacrifice. These letters are not boilerplate pleas for mercy; they are rich, specific and emotionally honest.

Not a single writer minimizes the seriousness of the offenses. Not a single writer claims to know anything about the trial's allegations. Instead, each speaks to what they do know: the man they have lived with and depended on for decades – and the picture they paint is unmistakable.

### A. <u>A Life Shaped by Early Loss, Burden and Responsibility</u>

Mr. Orense Azócar was born in 1955 in Anaco, Venezuela, in a working-class family without privilege or protection (PSR ¶96). His life changed abruptly when his father died. He became, by necessity, a caretaker – long before he became an adult.

His sister recalls that when she was only eight years old and their father was murdered, Mr. Orense Azócar immediately stepped into the role of protector and supporter for both her and their mother, assuming responsibilities well beyond his years (Ex. B, Letter of Virginia Orence.) Mr. Orense Azócar's brother similarly describes him as the stabilizing force in the household – the person whose effort, sacrifice and work ensured that the family had what they needed during their most difficult years (Ex. A, Letter of Abdonis Azócar.)

Judge Vernon S. Broderick
November 26, 2025
Page 4

These were not fleeting acts of kindness or empty descriptors. The family's survival – emotionally and financially – depended on Mr. Orense Azócar stepping into the role his father left behind. This was the lived reality of a household that endured hardship and relied on a teenage boy to assume an adult's responsibilities. His childhood was defined by work, responsibility and the constant pressure to provide. The early loss did not break him; it forged him – and his role as the one who steps in, shoulders burdens and provides for others became the dominant theme of his life.

B.   A Devoted Son: Decades of Caregiving and Quiet Sacrifice

After taking responsibility for his siblings, Mr. Orense Azócar continued to care for his mother for decades – well into adulthood. This role was not casual. It was consistent, daily and central to who he was. His ex-wife, Carel, describes him as "a respectful son… with strong moral values… [who] maintains a very close bond with his family" (Ex. D, Letter of Carel Ydler Medina.) His sister elaborates: "He has always shown unconditional love for our mother . . . constantly attentive to her well-being and seeking her happiness in every gesture and detail" (Ex. B, Letter of Virginia Orense.)

Mr. Orense Azócar's mother lived with him at times, and he provided for her financially and emotionally. His family describes a pattern of extraordinary consistency: weekly groceries, medical appointments, emotional support, bill payments and constant availability.

This caregiving, which lasted decades, is a powerful window into his character. It shows kindness, patience and loyalty – qualities that cannot be faked and are rarely associated with defendants accused of predatory or violent conduct.

C.   A Present, Influential and Loving Father

Mr. Orense Azócar did not merely repeat the pattern of caregiving he learned as a child – he expanded it as a father. The letters speak uniformly to his devotion. None describe a man who was absent, disengaged or emotionally unavailable. Quite the opposite.

His son, Abdonis, writes: My father is the "pillar of our family… He has been my mentor, my confidant… who has taught me the most important values: honesty, perseverance, and compassion." (Ex. C, Letter of Abdonis Orense Ydler.) This speaks to a father who was involved in daily life, who taught by example and who shaped his son's understanding of morality and responsibility. His ex-wife echoes the same truth: "He was always… an exemplary father, dedicated and present in the life of our children and grandchild." (Ex. D, Letter of Carel Ydler Medina.)

By all accounts, his parenting was active, not passive. He helped with homework, guided difficult decisions, celebrated successes and built a family structure that depended on him

emotionally as much as financially. The fact that his children and grandchildren remain deeply connected to him – even now, while he sits in federal custody – speaks to the lasting impact of that dedication.

        D.   <u>A Lifetime of Legitimate Work and Public Service</u>

        Mr. Orense Azócar's background also reflects decades of legitimate work in both public service and private enterprise. As detailed in the PSR, he previously served as the customs director at the Simón Bolívar International Airport in Maiquetía, Venezuela, earning a steady salary in a civilian government position, and later worked as an inspector with the National General Inspectorate of Finance. Beyond his government service, he spent more than 18 years owning and operating a cattle farm in Venezuela that, at its peak, maintained over 800 milk cows and generated substantial lawful income. He also engaged in legitimate commercial work as an intermediary between Venezuelan and U.S. companies, including facilitating transactions between asphalt suppliers and buyers – for which he received lawful commissions. These long-standing forms of employment demonstrate that Mr. Orense Azócar lived a stable and productive civilian life for decades, grounded in work, responsibility and public trust – a portrait that stands in sharp contrast to the government's depiction of him as a narcotics trafficker.

        E.   <u>Voices of His Daughters</u>

        Mr. Orense Azócar's daughter, Alexandra, offers one of the clearest portraits of the father he has always been. She writes that her father is "a man of solid principles and a huge heart," a steady and protective presence throughout her life. (Ex. G, Letter of Alexandra Orense.) She explains that she and her siblings "idolize him because he is our guiding light, the person who has always guided and protected us," and describes him as "the most important person in my life; I idolize, admire, respect, and love him."

        Mr. Orense Azócar's other daughter, Virmaryz, offers an equally powerful account of the father she knows – one that reflects not only love but profound gratitude and moral clarity. She describes him as a man of "integrity, optimism, and unwavering strength," whose generosity extended far beyond his family and whose instinct was always to help those in need. (Ex. H, Letter of Virmaryz del Valle Orense Astudillo.) She recounts the values he instilled in his children – honesty, empathy, humility – and the emotional devastation his absence has caused for her and her young children, who continue to ask when their grandfather will return. Her letter reflects a daughter struggling to explain to her children why their grandfather, a man they adore and who blesses them in every brief call he can make from custody, is not home. She speaks vividly about the sacrifices their family makes from Venezuela, a country in severe economic crisis, to support his basic needs in detention. Her words reinforce what every letter shows: that Mr. Orense Azócar is a man defined not by the allegations in this case but by a lifetime of selflessness, consistency, moral grounding and love.

Judge Vernon S. Broderick
November 26, 2025
Page 6

These are not abstract expressions of affection. They reflect decades of consistent moral guidance, emotional stability and unconditional support. Even now, unable to be in the United States to support him, his daughters describe a profound helplessness that underscores just how central their father has always been to their lives.

F.  A Man Defined by Quiet Generosity and Moral Integrity

What separates Mr. Orense Azócar's letters from typical sentencing submissions is the consistency, specificity and emotional truthfulness of the stories they contain.

One story from his sister illustrates this better than any general statement: As a young man, struggling financially, Carlos asked his uncle-in-law to pay for a plate of food, promising to return the money when he received his first paycheck. The uncle refused. Decades later, when that same uncle-in-law died and the widow had no resources for the funeral: "Carlos learned of the situation and immediately called her to reassure her and tell her that he would take care of all the expenses" (Ex. B, Letter of Virginia Orence.)

He asked for nothing, held no grudge and he simply stepped forward to help. This moment of generosity and forgiveness captures his character more fully than labels ever could. His brother corroborates this lifelong pattern: Mr. Orense Azócar "is the first person to offer help without expecting anything in return. His loyalty is unquestionable." (Ex. A, Letter of Abdonis Azócar.)

This is a man who steps in quietly, without fanfare, whenever someone needs him.

G.  A Reliable Source of Help in Moments of Crisis

The letters also describe how Mr. Orense Azócar responded when others were suffering. These are not isolated incidents; they reflect a lifetime of helping without hesitation. His cousin, Nexayda, explains that during her father's medical emergency: "He offered us lodging in his home for almost a month, daily transportation to the clinic, and was always available to assist us in any emergency that arose." (Ex. E, Letter of Nexayda Martínez Azócar.)

Taking a family into your home, providing daily transportation and carrying that emotional load shows not only generosity but reliability. The family's descriptions reinforce one another: his identity is intertwined with service, compassion and responsibility.

H.  Mr. Orense Azócar's Character Is Entirely Inconsistent with the Government's Allegations

The man described in the PSR as the orchestrator of an international trafficking organization bears no resemblance to the man described by every close relative, friend and family member who has lived with him, relied on him or worked alongside him.

Judge Vernon S. Broderick
November 26, 2025
Page 7

This is not a case in which troubling conduct exists alongside an otherwise complex personal life. This is a case where the PSR's allegations – based almost entirely on cooperator testimony – simply do not match the man universally described in the letters.

No one describes Carlos as violent. No one describes him as controlling, manipulative, materialistic or power-seeking. The unanimous picture is of a quiet, family-oriented man who is self-sacrificing, morally grounded and deeply committed to those he loves.

I.    Age, Declining Health and the Harsh Reality of Aging in Prison

Mr. Orense Azócar is 70 years old. He has spent the last three-plus years detained at the MDC. The PSR confirms that he is in declining physical health (PSR ¶¶88–89). In addition to age-related decline, Mr. Orense Azócar suffers from several chronic medical conditions that substantially worsen in a custodial environment. He has been diagnosed with hypertension, type 2 diabetes and an enlarged prostate – conditions that require regular monitoring, reliable medication delivery and stable medical care. He has been prescribed Losartan (for hypertension), Finasteride (for enlarged prostate), Atorvastatin (for high cholesterol) and Metformin (for diabetes), all of which he takes daily. These conditions become significantly more dangerous in a prison environment where access to timely medical evaluation, consistent monitoring and uninterrupted medications is often unreliable.

The physical and emotional toll of incarceration at his age is exponentially greater than for younger defendants. Research shows that each year of imprisonment for an older person is the functional equivalent of several years for someone younger.

Thus, the mandatory minimum sentence of 40 years is not merely lengthy – it is catastrophic. It eclipses the balance of his natural life. There is no scenario in which Mr. Orense Azócar leaves federal prison alive, and this reality should weigh heavily in the sentencing calculus.

III. **NATURE AND CIRCUMSTANCES OF THE OFFENSE**

The defense recognizes the seriousness of the conviction. Conspiracy to import cocaine and possession of machineguns carry severe penalties, and nothing in this submission minimizes that seriousness. However, the statutory minimum is already extraordinarily severe for any defendant, and nothing in the offense conduct justifies a sentence above it.

Additionally, the "nature and circumstances of the offense," as shown by the actual trial record, do not justify a sentence above the mandatory minimum.

Several aspects of the offense context are particularly important:

Judge Vernon S. Broderick
November 26, 2025
Page 8

A. The evidence was entirely historical and dependent on cooperating witnesses, describing conduct from the early 2000s through 2016, with no allegation of criminal activity after April 2016.

B. No physical evidence – no drugs, weapons, money, documents or communications – was ever seized from Mr. Orense Azócar.

C. The jury rejected the government's most serious firearms allegation, acquitting him of the destructive-device object.

D. A 40-year sentence already accomplishes every purpose Congress intended.

For a 70-year-old man, nothing more is necessary or justified.

## IV. HARSH CONDITIONS OF CONFINEMENT

Mr. Orense Azócar has spent the last three-plus years detained at the Metropolitan Detention Center ("MDC"), one of the most notoriously troubled facilities in the federal system. Courts across this District have recognized the MDC's: chronic staffing shortages, rolling lockdowns, electrical failures, lack of medical care, lack of outdoor time, lack of programming, inconsistent access to showers and near-constant environmental stress.

Judges in the Southern and Eastern Districts have taken the horrific conditions of confinement into consideration in imposing sentences, even in the most serious cases. Last year, Judge Furman, in *United States v. Chavez*, 22-CR-303 (JMF), Dkt. 31 (S.D.N.Y. Jan. 4, 2024), addressed the harsh conditions at the MDC, noting the well-publicized disasters and perpetual lockdowns, largely attributable to staffing shortages. Judge Furman emphasized the need to reduce the prison population as a way to alleviate these horrific conditions. Similarly, in *United States v. Colucci*, 2024 WL 3643857 (August 5, 2024), Judge Gary R. Brown reviewed some of the most significant problems at the MDC – including the failure to provide appropriate and timely medical care, the lack of adequate supervision and the uncontrolled violence – in ruling that a sentence of nine months incarceration would be converted to a sentence of home confinement if the defendant were designated to the MDC.

Violent incidents underscore the danger inside the MDC. On April 27, 2024, an MS-13 gang member was brutally stabbed 44 times in an attack captured on video, which revealed a disturbingly slow response from the lone correctional officer on duty. Annese, *See it: Video from inside troubled Brooklyn federal jail shows brutal gang stabbing*, N.Y. Daily News, (July 27, 2024, 5:30 PM), https://www.nydailynews.com/2024/07/27/see-it-video-from-inside-troubled-brooklyn-federal-jail-mdc-shows-brutal-gang-stabbing/. The video shows the brutality and the disturbingly slow staff response.

Tragically, other inmates have not been as fortunate. On June 7, 2024, Uriel Whyte was stabbed to death after having been incarcerated at the MDC for two years. Annese, *Inmate at*

Judge Vernon S. Broderick
November 26, 2025
Page 9

*Brooklyn's troubled Metropolitan Detention Center is stabbed to death: sources*, N.Y. Daily News, (June 20, 2024, 4:50 PM), https://www.nydailynews.com/2024/06/20/inmate-at-brooklyns-troubled-metropolitan-detention-center-is-stabbed-to-death-sources/.

On July 17, 2024, Edwin Cordero was killed after a fight broke out in the facility at about 2:50 p.m. Mr. Cordero had just been sentenced on a VOSR violation before Judge Ronnie Abrams in the S.D.N.Y. on June 25, 2024. Fadulu, *Inmate Dies After Fight Breaks Out at Troubled Brooklyn Jail*, N.Y. Times, (July 17, 2024), https://www.nytimes.com/2024/07/17/nyregion/inmate-dies-metropolitan-detention-center.html.

For a young defendant, these conditions are harsh. For a 70-year-old man, they are devastating – the impact of these conditions is magnified. Simple deprivations that younger inmates may withstand – lack of sunlight, inconsistent medical attention, extreme temperatures, chronic noise and lack of sleep – take a significant toll on an older body.

Mr. Orense Azócar's conduct at the MDC has been overwhelmingly positive – the PSR confirms that Mr. Orense Azócar has had no disciplinary infractions (PSR ¶5), has participated fully in available programming (*Id.*) and suffers from deteriorating physical health (PSR ¶105–06).

His experience at the MDC thus represents punishment well beyond what Congress or the Guidelines envisioned. For elderly detainees, the MDC's conditions magnify both the harshness and the risks of confinement. The conditions independently support imposing no more than the mandatory minimum.

## V. THE GUIDELINES CALCULATION & PSR OBJECTIONS

Although the advisory Guidelines calculations yield a sentence of life imprisonment, the Guidelines do not override Congress's mandate that the Court impose the least severe sentence consistent with the mandate. The statutory minimum exceeds the life expectancy of Mr. Orense Azócar, a 70-year-old man.

### A. The Mandatory Minimum Controls the Sentence

The statutory structure requires 10 years on Count One (21 U.S.C. §960(b)(1)(B)); and 30 years consecutive on Count Three (18 U.S.C. §924(c)(1)(B)(ii)), yielding a mandatory minimum of 40 years.

A Guidelines recommendation of life imprisonment does not meaningfully change the sentencing reality. Whether the sentence is 40, 50 or 60 years, Mr. Orense Azócar – at age 70 – will die in custody. The mandatory minimum is therefore the controlling and determinative sentence.

Judge Vernon S. Broderick
November 26, 2025
Page 10

Thus, while the Guidelines must be calculated, their advisory nature – and their reliance on disputed allegations – means they should not outweigh the statutory command or the individualized §3553(a) analysis.

B.  The PSR's Guidelines Narrative Is Unsupported by Jury Findings and Is Broadly Disputed

The Guidelines calculation in the PSR rests on an elaborate narrative alleging international coordination of multi-ton cocaine shipments, receipt of cocaine from the FARC, special relationships with Venezuelan military officials, outfitting of aircraft for smuggling, repeated use of clandestine airstrips, armed security teams, large-volume weapons transactions, multimillion-dollar financial transfers and leadership role in a multi-year conspiracy. (See PSR ¶¶10–68.)

Mr. Orense Azócar disputes every one of these allegations. In his PSR objections, he objects to all factual assertions in paragraphs 10 through 68 attributing narcotics trafficking, weapons possession, bribery, or any other criminal conduct to him. These disputes reflect the actual limits of the trial record.

Not one of these allegations was proven independently of the cooperating witnesses. Not one was corroborated through seizures, surveillance, recordings, documents or forensic evidence. Most involve decade-old recollections from incentivized cooperators.

C. Why the PSR's Factual Allegations Should Not Be Adopted for Sentencing Purposes

The disputed PSR allegations are not supported by a preponderance of the evidence nor do they have sufficient indicia of reliability.

1. The Allegations Rely Solely on Incentivized Cooperators

All cooperators had incentives and hopes for substantial sentence reductions. None produced physical evidence or contemporaneous corroboration. Their accounts diverged in material ways.

2. Much of the Alleged Conduct Pre-dates 2012

The testimony concerned conduct from 2003–2010 (Arvelaiz), 2006 (Satizabal), before 2012 (López Perdigón) and April 2016 (Boada). Time weakens memory and increases the risk of embellishment.

3. No Physical Evidence Supports the Narrative

No drugs, weapons, currency, ledgers or documents were ever seized from Mr. Orense Azócar – a stark contrast to typical high-level narcotics cases.

Judge Vernon S. Broderick
November 26, 2025
Page 11

4. The Jury Rejected the Government's Most Serious Firearms Theory

The acquittal on the destructive-device object limits the conduct the Court should consider.

Given these deficiencies, the PSR's broader narrative lacks the reliability required for sentencing. Accordingly, it should not be adopted.

D. The Guidelines Calculation Does Not Reflect Mr. Orense Azócar's Personal Circumstances

The Guidelines calculations do not incorporate that Mr. Orense Azócar is 70 years old, he has no criminal history (PSR ¶90), he has been a lifelong caregiver for his siblings, mother and children, he has no history of violence, he has endured harsh confinement conditions at the MDC and his conviction rests on disputed historical allegations.

When these personal factors are considered, the Guidelines' life recommendation is not just excessive – it is disconnected from this defendant's actual circumstances. The reality remains that Mr. Orense Azócar will never reenter society regardless of sentence length. A higher term of imprisonment would serve no purpose.

## VI. IMMIGRATION CONSEQUENCES

An immigration detainer ensures that Mr. Orense Azócar will be transferred to immigration custody and removed upon completion of his sentence – in the unlikely event he survives a 40-year sentence. Deportation often imposes a penalty more severe than imprisonment, and the collateral consequences he faces are themselves significant punitive effects that warrant consideration under § 3553(a).

## VII. AVOIDING UNWARRANTED SENTENCING DISPARITIES

The §3553(a)(6) factor strongly supports imposing *only* the mandatory minimum. The PSR itself identifies similarly situated defendants who received substantially lower sentences: Cliver Alcalá Cordones, a former general alleged to have participated in multi-ton trafficking operations and alleged narco-military corruption, received 260 months (PSR ¶99). Other high-volume narcotics defendants routinely receive lesser sentences, even with enhancing conduct.

A 40-year mandatory sentence is already dramatically higher than these outcomes. Adding additional years would widen, not narrow, unwarranted disparities and would serve no legitimate sentencing purpose.

## VIII. AGE, RECIDIVISM, AND PUBLIC SAFETY

The Sentencing Commission's landmark report "The Effects of Aging on Recidivism" (2017) found: offenders aged 65 or older have a reincarceration rate of only 4.1

Judge Vernon S. Broderick
November 26, 2025
Page 12

percent within eight years of release, confirming that recidivism risk declines sharply with each decade of age.

By the time Mr. Orense Azócar completes even the mandatory minimum, he will be 110 years old – well beyond any conceivable risk of reoffending.

## IX. APPLICATION OF §3553(a) FACTORS

The §3553(a) factors do not support any sentence above the mandatory minimum.

### A. Nature and Circumstances of the Offense

Conspiracy to traffic narcotics is unquestionably among the most serious federal offenses, but the mandatory minimum fully accounts for its seriousness. A forty-year sentence provides just punishment, reflects the gravity of the offense and aligns with Congress's intent. Nothing in the record warrants a sentence above that required minimum.

### B. History and Characteristics of the Defendant

Mr. Orense Azócar's entire life – one of hard work, ethical conduct and devotion to family and faith – stands in sharp contrast to the allegations in this case. The letters of support confirm this unanimously.

His adjustment at the MDC reflects the same determination and decency that defined his life outside custody. Despite language barriers and limited programming for Spanish-speaking detainees, he has made consistent efforts to participate in what is available.

He has maintained a clean disciplinary record, has conducted himself respectfully toward staff and fellow inmates and has used his time productively. While confined, he has devoted himself to reflection and self-improvement: learning English, reading the Bible regularly and remaining closely connected with his family – his strongest source of support.

Extraordinary mitigation emerges from every aspect of his history: lifelong responsibility, compassion, generosity and devotion to family.

### C. Specific Deterrence

Mr. Orense Azócar's experience in the MDC has already served as a powerful deterrent. He is a first-time offender who is 70 years old. He has no intention of returning to the United States after removal. Under these circumstances, additional prison time would have no incremental deterrent effect.

### D. General Deterrence

A longer sentence would not meaningfully deter others. Social-science research consistently demonstrates that increasing sentence length provides little additional deterrence once

Judge Vernon S. Broderick
November 26, 2025
Page 13

a punishment is already severe.[1] Here, the mandatory minimum of 40 years is among the harshest non-capital penalties in the federal system.

General deterrence is fully satisfied by the mandatory minimum.

E. Protection of the Public

Because Mr. Orense Azócar faces mandatory deportation, any risk to the public in the United States will be eliminated upon his release – even assuming he lives long enough to complete the mandatory minimum. Deportation underscores that a lengthier custodial term would serve no additional purpose related to public protection.

**CONCLUSION**

A 40-year sentence satisfies every statutory goal, reflects Congress's intention, accounts for the defendant's life history and advanced age, protects the public, sends a strong message of deterrence and avoids sentencing disparities. Nothing in the record – nothing in the PSR, the trial testimony or the §3553(a) factors – justifies adding years to a sentence that already ensures he will die in prison.

For the foregoing reasons, including Mr. Orense Azócar's deeply compelling personal history, his age, the harsh conditions of his pre-sentence confinement, the lack of corroborating physical evidence, the historical and disputed nature of the allegations, the overwhelming severity of the statutory minimum sentence and the mandate of §3553(a), the defense respectfully asks the Court to impose the mandatory minimum sentence of 480 months.

A sentence of forty years is sufficient, but not greater than necessary.

Thank you for your consideration.

Respectfully submitted,

Eylan Schulman

---

[1] *See, e.g.*, Steven F. Durlauf and Daniel S. Nagin, *Imprisonment and Crime: Can Both Be Reduced?*, 10 CRIMINOLOGY & PUBLIC POLICY 13 (Feb. 2011).

# EXHIBIT A

Honorable Judge Vernon S. Broderick
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007-1312

Honorable Judge Vernon S. Broderick:

I, Abdonis José Orence Azocar, a Venezuelan citizen with identity card number V-4217.556, a doctor by profession, respectfully address you as the older brother of Carlos Eduardo Orense Azocar.

Through this letter, I wish to express in the simplest, most honest, and transparent way possible the values and human qualities of my brother Carlos Eduardo Orense Azocar, whom I love and admire. Since our childhood, Carlos has always distinguished himself by a series of unshakeable values. The value that defines him is his profound sense of responsibility, which he applies to all aspects of his life. This is complemented by honesty and remarkable solidarity towards those around him.

As a son, he has always shown unconditional respect and constant dedication to our mother. From a young age, he took on a supportive role after the death of our father. Those were difficult times for everyone, especially for our mother. My brother Carlos was the cornerstone of our family well-being, ensuring that we lacked nothing, with great effort, work, and sacrifice on his part. For him, family is everything. As a father, Carlos is a man of character, but also loving, present, and actively involved in the lives of his children.

He understands that being a father goes beyond the financial; it is about instilling values such as discipline, respect, and perseverance. His children know that he will always be there for them. As a brother, his role has been a pillar of unconditional support. He is the first person to offer help without expecting anything in return. His loyalty is unquestionable, and his ability to offer sound advice and act with empathy has been fundamental for me and the rest of our family. More than a brother, he has been like a father to me, even though I am the older brother. I remember when we lost our father, while I was a medical student, Carlos said to me: "Do not worry, you are not alone, keep studying medicine." I always had his support, even when I started my professional career. As a 70-year-old man today, I must admit that I have a lot to thank my brother Carlos, because thanks to him I am the man I am today. My brother, Carlos Eduardo Orense Azocar, is a person of extraordinary character.

The values of responsibility, loyalty, empathy, and integrity are not just words to him, but the foundation of how he lives his life as a son, brother, father, and friend.

I trusted in the Almighty God and in his ability to remain strong.

Sincerely,

Abdonis José Orense Azocar

September 22, 2025

# EXHIBIT B

Judge Vernon S. Broderick

United States District Judge

United States Courthouse

40 Foley Square

New York, NY 10007-1312


Dear Judge Broderich:

I, Virginia Mercedes Orence de Martins, Venezuelan citizen with identity card number V-9.817030, a lawyer by profession, am writing to you in my capacity as sister of Carlos Eduardo Orense Azócar to say a few words about him. Beyond the blood ties that bind us, I have a deep sense of respect for the person he is, in his role as son, brother, father, and friend, always standing out for his human qualities.

My brother is, above all, a family man. He has always shown unconditional love for our mother, to whom he is deeply devoted, constantly attentive to her well-being and seeking her happiness in every gesture and detail. Similarly, he is a dedicated father, being a close presence and committed to his children's education and the transmission of values. He is a present, attentive father who cares about his children's values, principles, and comprehensive education.

As a brother, he is always proud of each of us, watchful of our well-being, and affectionate. He is a man who knows how to value the meaning of family. We were orphaned when my younger brother was a teenager and I was still a child (8 years old), and Carlos, together with my older brother, nobly and responsibly took on the task of caring for us and our mother. I will always be eternally grateful for all the love, sacrifice, work, and dedication.

My brother is also a good friend, always willing to help without expecting anything in return. His generosity, solidarity, and loyalty are characteristics that define him and make him a person you can trust. I will never forget when "my brother Carlos told us one day that when he was living with a paternal aunt, he was just starting his studies and his working life. He had not yet received his first paycheck, and in a moment of need, he ran into our aunt's husband, our uncle-in-law, and humbly asked him to pay for a plate of food, assuring him that he would reimburse him as soon as he got paid. However, that help was denied. Many years later, when that uncle-in-law passed away and our aunt did not have the financial resources to pay for the funeral, Carlos learned of the situation and immediately called her to reassure her and tell her that he would take care of all the expenses. This gesture speaks clearly of the nobility and generosity of Carlos Orense.

My brother, Carlos Eduardo Orense Azócar, is a man of exceptional human qualities, characterized by his empathy, sensitivity, and deep sense of justice. Even in the face of the challenges he is currently facing, I have complete confidence in his resilience, his ability to overcome difficulties, and his continued positive influence on those around him. For this reason, my opinion of him remains unchanged and is not altered by the current circumstances.

Sincerely,

Virginia Mercedes Orence de Martins

September 18, 2025

# EXHIBIT C

Caracas. 21 september 2025

**Judge Vernon S. Broderick**

**United States District Judge**

**United States Courthouse**

**40 Foley Square**

**New York, NY 1007-1312**

Honorable Judge Broderick: I am Abdonis Orense Ydler, son of Carlos Orense, I write this letter with the utmost respect to share with you how Carlos Orense has been as a father , and as a human being and the profound impact he has had on my life and that of our family. My father is more than a father figure; he is the pillar of our family. As long as I can remember, he has been a person of unbreakable integrity and tireless work ethic. He has always put the needs of others before his own. I remember that, even in the toughest times, he found a way to smile and make us feel safe.

He represents for me the meaning of sacrifice and dedication. He has been my mentor, my confidant, and the person who has taught me the most important values: honesty, perseverance, and compassion. Each of my decisions has been influenced by the lessons he has given me, both with his words and with his actions. His example has been a constant guide in my life. I hope that my testimony helps you understand the true essence of my father, not only as the man who is being legally processed, but as the man of great heart and character that he is. I sincerely appreciate your time and consideration. Sincerely,

Abdonis Orense Ydler

,

# EXHIBIT D

Caracas. 20 september 2025

Judge Vernon S. Broderick
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 1007-1312

Dear Judge Broderick:

I, Carel Ydler Medina, ex-wife of Carlos Orense Azocar, respectfully write this letter to offer my testimony and give reference about the character of Carlos Orense Azocar, with whom I was married for 14 years. I do so with respect and honesty, hoping that my perspective may be of usefulness in the case currently under your consideration. During the time we shared, I was able to know Carlos as a person of deep and good principles. He was always, and still is, an exemplary father, dedicated and present in the life of our children and grandchild. Additionally, he is a respectful son, an unconditional brother, and a loyal friend. His kind character and good will are evident in his constant willingness to help those in need, expecting nothing in return. He was raised in a very beloved family in the city of Anaco, with strong moral values that shaped him into the upright person he is today. He maintains a very close bond with his family, which shows the importance he places on personal relationships. I hope that my testimony helps to highlight the character and human quality of Carlos Orense Azocar. I thank you in advance for the attention you give to this letter. Sincerely

Carel Ydler Medina

# EXHIBIT E

Judge Vernon S. Broderick

United States District Judge

United States Courthouse

40 Foley Square

New York, NY 10007-1312

Dear Judge Broderick:

I write this letter to you with all due respect, to tell you a little about Carlos Eduardo Orense

Azocar, a    close relative,  whom  I have known since  childhood  as  my cousin. I hold

him in high regard, and I deeply regret the terrible   situation he is experiencing.

Over the years, I have witnessed that Carlos Eduardo is a person who, despite his strengths

and weaknesses, managed to earn the affection of his family, always supporting family

reunions, and being there for us in sad and difficult times. In 1997, when my father suffered

a heart attack and was transferred to Caracas, his support was very important to us. He

offered us lodging in his home for almost a month, daily transportation to the clinic, and

always available to assist us in any emergency that arose.

I will always be grateful for his support. Despite his strong character, he has a great

sensitivity to understand the situations of others and is always willing to offer a helping hand.

I appreciate you taking a little of your time to analyze, my humble testimony so that with

God's help, you can make your decision.


Respectfully

Nekayda María Martínez Azocar
Venezuelan citizen ID Card : V8.469.576

# EXHIBIT F

Judge Vernon S. Broderick

United States District Judge

United States Courthouse

40 Foley Square

New York, NY 10007-1312

Dear Judge Broderick:

I am writing to you in reference to **Carlos Eduardo Orense Azocar**, my nephew. To me, he is like another son, and I want to emphasize what a special person he has been in my life. He has always shown great affection for me and has been there every time I have needed him.

Despite the difficult situation he is experiencing, I prefer do not focus on this moment of adversity. In my mind, I seek to erase this nightmare and treasure only the beautiful memories we shared as a family. I fondly remember Christmases, New Year's, and birthdays, when Carlos always made time to share with us.

He always strove to keep alive my mother's valuable lesson, who used to say: "The family should always be united." His commitment to this legacy has been a source of joy and unity for all of us.

For all the above reasons, I ask that you please view him with compassion when making your decision. I bid you farewell, thanking you in advance for whatever you can do for him.

Sincerely

Delia Azocar de Martínez

Card ID: V1.158.872

# EXHIBIT G

From: Alexandra Orence

Honorable Judge Vernon S. Broderick
United States District Judge
United States Courthouse
40 Foley Square
New York. NY 10007-1312

Dear Judge Broderick:

I am writing this letter with the deepest respect and with my heart in my hand to express what a great person my father is, (CARLOS EDUARDO ORENSE AZOCAR).

I am his daughter, Alexandra Orence, and I am heartbroken by the situation he is going through. I know your position requires impartiality, but I humbly ask you to consider my father's true essence.

My father is a man of solid principles and a huge heart. He has always been a pillar for our family and his friends. His unconditional love and good nature are evident in every one of his actions. He is a good son, father, grandfather, and uncle, always present in both the happiest and the toughest moments of our lives. He has been by our grandmother's side, his mother, at every moment, demonstrating unparalleled love and dedication.

In addition to his warmth, my father is a hardworking and intelligent man. He has raised me and my siblings with kindness and humility, always willing to give us his all; he is a loving, caring, and respectful father with unparalleled human qualities. We, his children, idolize him because he is our guiding light, the person who has always guided and protected us. Seeing my father in this situation has left me powerless, feeling that I can do nothing to help him because it is beyond my reach. I ask you, Your Honor, to search your heart. I implore you to bear in mind that the man before you is a good person of principle who has dedicated his life to being the pillar of support for his entire family and those around him.

Regrettably, due to the situation in the country, I cannot be present to support him physically and tell him that I love him deeply and that he will always have me and our entire family. With the deepest sadness a human being can feel, I respectfully say that my father

would never do anything improper because his character and personality would not allow it, and he would never set a bad example for us. Carlos Eduardo Orense Azócar is the most important person in my life; I idolize, admire, respect, and love him madly. And how could I not, when my father has earned that and more from his children?

I thank you in advance for the time you take to read this letter and for any consideration you may give to my most sincere words. Thank you.

Sincerely,
Alexandra Orence

De: Alexandra Orence

Le escribo esta carta con el más profundo respeto y con el corazón en la mano para expresarle la gran persona que es mi padre, (CARLOS EDUARDO ORENSE AZOCAR )

Soy su hija, Alexandra Orence, y estoy destrozada por la situación que está viviendo. Sé que su posición le exige imparcialidad, pero le pido, con toda humildad, que considere la verdadera esencia de mi padre.

Mi padre es un hombre de principios sólidos y un corazón enorme. Siempre ha sido un pilar para nuestra familia y para sus amistades. Su incondicionalidad y buenos sentimientos son evidentes en cada una de sus acciones. Es buen hijo, padre, abuelo,tío, siempre presente tanto en los momentos más felices como en los más duros de nuestras vidas. Él ha estado al lado de nuestra abuela, su madre, en todo momento, demostrando un amor y una dedicación insuperable

Además de su calidez humana, mi padre es un hombre trabajador e inteligente. Nos ha educado a mí y a mis hermanos con bondad y humildad, siempre dispuesto a darnos todo de su ser,es un padre cariñoso amoroso,respetuoso con una calidad humana insuperable. Nosotros, sus hijos, lo idolatramos porque es nuestro faro, la persona que nos ha guiado y protegido siempre.

Ver a mi padre en esta situación me ha dejado sin fuerzas, sintiendo que no puedo hacer nada para ayudarlo, porque no está a mi alcance. Le pido, señor Juez, que se ponga la mano en el corazón. Le ruego que tenga en cuenta que el hombre que tiene ante usted es una persona buena, con principios, que ha dedicado su vida a ser el pilar de apoyo para toda la familia y su alrededor.

Lamentable por la situación país no puedo estar presente para apoyarlo físicamente y decirle que lo amo profundamente y siempre va contar con mi persona y toda su familia, con la tristeza más profunda  que pueda existir en un ser humano le digo con mucho respeto, que mi padre jamás haría algo indebido porque su carácter y personalidad no se lo permite u nunca nos daría un mal ejemplo, Carlos Eduardo Orense azocar es la persona más importante de mi vida yo lo idolatro,lo admiro, lo respeto y lo Amo con locura, y como no hacerlo si mi padre se ha ganado eso y más, con sus hijos.

Le agradezco de antemano el tiempo que dedique a leer esta carta y la consideración que le pueda tener a mis más sinceras palabras gracias .

Atentamente,

Alexandra Orence

# EXHIBIT H

Honorable Judge Vernon S. Broderick
United States District Judge
United States Courthouse
40 Foley Square
New York. NY 10007-1312

Dear Judge Broderick:

How difficult it is to write this letter.

There are moments in life when you need to stop and put into words what your heart feels, and today is one of those days. And especially when I'm about to talk about my dad, who is currently going thru an indescribable situation, I've always trusted in divine justice and placed everything in the hands of Almighty God. I simply want you to know how wonderful my dad, Carlos Eduardo Orense Azócar, is, and how deeply grateful I am that he's my father and such an essential part of my life.

There are no words sufficient to describe the incredible person you are, my role model, and my greatest inspiration. The way you face life, always with integrity, optimism, and unwavering strength, has taught me more than any book.

But what truly makes him unique is his enormous heart, which extends far beyond our family. He is an exceptional friend, not only to us but to everyone around you. Seeing how you stay close to your friends and how your entire family adores you as a confidant and companion is a testament to your human qualities.

Your generosity and selflessness are truly admirable. No matter who needs it—a friend, a neighbor, or someone in particular—you're always willing to offer your help, your time, and your resources without expecting anything in return. It's the very definition of being helpful and generous. That ability to lend a hand is a gift that positively impacts the lives of so many people.

My dad is the best father I could ever ask for. I remember exactly how my dad used to advise us, teaching us to be better people and to go thru life with our heads held high, because he knew he wasn't raising us in the best way—with honesty, empathy, and humility. He always strove to give us the best and to be there for us in the toughest moments. Today, my children ask me about their grandfather, and it breaks my heart

because how can I explain to them the injustice being done to him? When they cry and ask me to call their grandfather, and he, in the little time he has to talk to them, only gives them his blessing and asks how they're doing, and they ask him when he's coming, and my dad says, "Soon!" And not being able to do anything to bring him back and clear up the injustice he's facing—I don't understand how people can harm others without caring about anything but their own benefit. I believe in divine justice, that the Almighty is in charge. Your Honor, with all due respect, I ask you to place your hand on your heart as you read this letter, and I trust that your oath will not be trampled by lies. Believe me, in the eyes of God you will always be blessed. My father is an honorable, responsible, loving man—a father, grandfather, uncle, friend, and brother. He is a good person. We have never been ostentatious; my father is being accused of something that is false. If it were true, he would have the most expensive law firm over there. And you have no idea the sacrifices we make to send him money for his needs. You must know the situation in Venezuela—this is difficult for us. Please help my father. 🙏

Sincerely

Virmaryz del Valle Orense Astudillo

A quien pueda interesar

Que difícil escribir esta carta

Hay momentos en la vida en que uno necesita detenerse y poner en palabras lo que siente el corazón, y hoy es uno de esos días. Y más cuando voy hablar de mi papá que en estos momentos está pasando una situación inespicable siempre e confiado en la justicia divina y poner todo en manos de Dios todo poderoso, Simplemente quiero que sepan lo maravilloso que es mi papá CARLOS EDUARDO ORENSE AZOCAR,lo profundamente agradecida que estoy de que sea mi padre y una parte tan esencial de mi vida.

No hay palabras suficientes para describir la persona increíble que es,mi modelo a seguir, y mi mayor inspiración. La forma en que enfrentas la vida, siempre con integridad, optimismo y una fuerza inquebrantable, me enseño más que cualquier libro.

Pero lo que realmente lo hace único es su enorme corazón, que se extiende mucho más allá de nuestra familia. Es un amigo excepcional, no solo para nosotros, sino para toda la gente que te rodea. Ver cómo te mantienes cerca de tus amigos y cómo la familia entera te adora como confidente y compañero, es un testimonio de su calidad humana.

Su generosidad y desinterés son realmente admirables. No importa quién lo necesite—un amigo, un vecino, o alguien en particular—siempre estás dispuesto a ofrecer tu ayuda, tu tiempo y tus recursos sin esperar nada a cambio. Es la definición de ser servicial y generoso. Esa capacidad para tender una mano es un regalo que impacta positivamente la vida de tantas personas.

Mi Papá es el mejor padre que podría desear. Recuerdo exactamente como mi papá nos aconsejaba, nos enseñaba a ser mejor personas e ir por la vida con la cara en alto porque él sabía que no estaba criando de la mejor manera , con honestidad, con empatía con humildad, siempre se esforzó por darnos lo mejor y estar presente en lo momentos mas difíciles, hoy mis hijos me preguntan por su abuelo y me destroza el corazón porque como les explico la injusticia que se está haciendo con el, cuando lloran y me dicen que llame a su abuelo y que su abuelo lo poco que hablan con mis hijos es para darle la bendición y para saber cómo están, y mis hijos le preguntan que cuando viene y mi papá le dice pronto! Y no poder hacer nada por su regreso y que se aclare la injusticia que está pasando con el, que no entiendo como hay personas que pueden dañar a otros sin importarle nada solo su beneficio propio, yo creo en la justicia divida, que es el todo poderoso quien se encarga, se juez con mucho respeto quiero que se ponga la mano en el corazón al momento de leer esta carta y confío que su juramento no lo pisoteen con mentiras, créame que ante los ojos de Dios usted va ser bendecido siempre, mi papá es una persona honorable ,responsable, cariñoso, padre , abuelo , tío , amigo ,hermano es una buena persona, nosotros jamás

hemos sido ostentosos, están acusando a mi papá de algo que es mentira si fuese así estuviera el bufete de abogados más costoso de allá , y usted no sabe el sacrificio que hacemos para poder enviarle dinero para sus cosas y debe de conecer la situación país de Venezuela esto es difícil para nosotros ayude a mi papá por favor 🙏🏼

Atentamente

Virmaryz del valle Orense Astudillo